IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANDREW MILLER,

          Plaintiff,

v.                                                      CIVIL ACTION NO. 2:14-cv-16868

DAVID BALLARD, et al.,

          Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the defendants' Motion to Dismiss Amended Complaint [ECF No. 80] and the plaintiff's Motions to Rule On/Grant Summary Judgment [ECF Nos. 88 and 92], which were referred to United States Magistrate Judge Dwane L. Tinsley. For reasons appearing to the court, the reference of these specific motions to the Magistrate Judge is **WITHDRAWN**, and for the reasons stated herein, it is **ORDERED** that the defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**, and the plaintiff's Motions to Rule On/Grant Summary Judgment are **DENIED**.

### I.    THE PLAINTIFF'S ALLEGATIONS

The plaintiff alleges in his verified Amended Complaint[1] alleges that, on November 19, 2013, the plaintiff was housed in cell 712 on pod 7 of the Quilliams II segregation unit at the Mount Olive Correctional Complex ("MOCC"). Am. Compl. ¶ 11 [ECF No. 38]. The plaintiff further alleges that defendants David Miller, Jonathan Ward, and Michael Blagg, among others, surrounded his cell door to "conduct a shakedown." *Id*. ¶ 12. The plaintiff further alleges that

---

[1] The plaintiff's handwriting in each of his filings is exceptionally difficult to discern.

Miller observed the plaintiff pouring an unknown liquid into his toilet, and Miller commanded the plaintiff to stop. *Id*. ¶ 13. Without further warning, Miller opened the food tray slot of the plaintiff's cell and commanded Ward to pepper spray the plaintiff, and Ward complied. *Id*. The plaintiff contends that, although he placed both hands in front of his face to block the spray, he was hit in the eyes and forehead with pepper spray. *Id*. ¶¶ 14–15.

The plaintiff alleges that Miller also ordered Blagg to use an electric gun ("Taser") on the plaintiff and that Blagg deployed the Taser, hitting the plaintiff with two small spikes—one in the left side and one in the left pelvis. *Id*. ¶¶ 16–17. The plaintiff further contends that the spot where the Taser hit him in the left pelvis is in the same area where an MOCC doctor located a torn ligament. *Id*. ¶ 18. The plaintiff alleges that he still suffers burning in his pelvis because of the torn ligament. *Id.* ¶ 24.

Upon information and belief, the plaintiff further alleges that the Taser was automatically set to deploy additional five-second bursts of electricity, which occurred after he was on the ground and officers had entered his cell to subdue him. *Id*. ¶¶ 19–20. The plaintiff alleges that, ultimately, he was Tasered three times for a total of fifteen seconds. *Id*. ¶¶ 21–22.

The plaintiff further contends that, after he was removed from his cell, he was taken to the multi-purpose room and, upon defendant Brian Penick's order, was placed in a restraint chair for a total of eight hours. *Id*. ¶¶ 27–34.

In his Amended Complaint, the plaintiff further summarily contends that defendant David Ballard "approved the shakedown, martial law, and ignored the plaintiff's grievances for relief," noting that "Martial law is another way to say use of force on inmates in the QOL [Quality of Life Program] for anything you want to which causes plaintiff's violation of constitutional rights." *Id*. ¶ 38. The plaintiff further summarily alleges that defendant Jim Rubenstein "is responsible for

everything that takes place in the WVDOC and denied plaintiff any relief in grievance. Didn't train staff." *Id*. ¶ 39. However, he provides no additional factual support concerning the specific conduct of Ballard and Rubenstein.

The plaintiff seeks declaratory relief, both preliminary and permanent injunctive relief, and monetary damages against the defendants, who are sued in both their individual and official capacities.

## II. DISCUSSION

### A. The Defendants' Motion to Dismiss

On August 3, 2015, the defendants filed the instant Motion to Dismiss.[2] On August 17, 2015, the plaintiff filed a one-page Response in Opposition [ECF No. 82] to the defendants' Motion to Dismiss, asserting that there is no reason to dismiss his official capacity or supervisory claims. The defendants did not file a reply brief. The Motion to Dismiss is ripe for adjudication.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

---

[2] When the plaintiff was granted leave to file his Amended Complaint, the court denied, without prejudice, a prior Motion to Dismiss [ECF No. 21] filed by the defendants. Order, August 3, 2015 [ECF No. 78]. In support of their new Motion to Dismiss, the defendants have incorporated by reference the Memorandum of Law [ECF No. 22] filed with their initial Motion to Dismiss. However, the Amended Complaint clarified that Captain Brian Penick, and not Captain Russell Matheny, is the defendant who ordered that the plaintiff be placed in the restraint chair for eight hours. Thus, to the extent that the defendants' incorporated Memorandum of Law refers to former defendant Matheny, the court will substitute Captain Brian Penick.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id*. at 678.

Furthermore, as noted recently in *Haley v. Virginia Dep't of Health*, 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov. 13, 2012), "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6). . . . The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1) [which provides for the dismissal of claims over which the court lacks subject matter jurisdiction]."

### i. *Monetary relief against the defendants in their official capacities*

The defendants' Motion to Dismiss and incorporated Memorandum of Law assert that, to the extent the plaintiff has brought claims against all of the defendants in their official capacities, any claims for monetary damages cannot survive because neither a state nor its officials acting in

4

their official capacities are "persons" under the civil rights statutes. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed.

*Id*. at 71 (citations omitted).

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment bars a suit in a federal court by individuals seeking to impose monetary liability upon a state or state officials, which may be paid from public funds. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985). The Eleventh Amendment, however, permits a federal court to enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds. *Quern*, 440 U.S. at 337. Accordingly, the court **FINDS** that all of the defendants are immune from liability for monetary damages in their official capacities under the Eleventh Amendment, and accordingly, such claims must be **DISSMISSED**.

### ii. *Claims against defendants Ballard, Rubenstein, and Penick*

The defendants' Motion to Dismiss and Memorandum of Law further assert that the plaintiff's Amended Complaint fails to state a plausible claim for relief against Rubenstein,

Ballard, and Penick. The defendants address such claims as claims of supervisory liability, citing the Fourth Circuit's decision in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). In *Shaw*, the Court held that a supervisor may be liable for the actions of his subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations. *Id*. at 798–801. Such liability cannot be based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id*. at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)).

The Amended Complaint alleges that David Ballard, as the Warden of MOCC, and Jim Rubenstein, as the Commissioner of the West Virginia Division of Corrections, are legally responsible for the operations of their facilities and the welfare of the prisoners therein. As noted above, the Amended Complaint summarily contends that Ballard "approved the shakedown, martial law, and ignored the plaintiff's grievances for relief," noting that "[m]artial law is another way to say use of force on inmates in the [Quality of Life Program] for anything you want to which causes plaintiff's violation of constitutional rights." Am. Compl. ¶ 38. The plaintiff further summarily alleges that Rubenstein "is responsible for everything that takes place in the WVDOC and denied plaintiff any relief in grievance. Didn't train staff." *Id*. ¶ 39. However, the plaintiff provides no additional factual support concerning the specific conduct of Ballard and Rubenstein.

The allegations in the Amended Complaint fall woefully short of the factual detail necessary to state a plausible Eighth Amendment claim against Ballard and Rubenstein, and the allegations are so threadbare and conclusory that the court cannot draw a reasonable inference that those defendants are liable for any of the alleged misconduct. Accordingly, pursuant to the dictates of *Twombly* and *Iqbal*, the court **FINDS** that the plaintiff's Amended Complaint fails to state a

claim upon which relief can be granted against Rubenstein and Ballard, and they should be dismissed as defendants.

However, I believe the allegations in the Amended Complaint concerning Penick are another matter. The plaintiff alleges that Penick ordered the plaintiff to be placed in a restraint chair even though the plaintiff had allegedly become compliant and no threat existed at the time the order was given. The plaintiff alleges he remained in the restraint chair for eight hours. The court **FINDS** that the Amended Complaint alleges facts sufficient to state a plausible Eighth Amendment claim against Penick. Thus, Penick will not be dismissed as a defendant at the present time.

### iii. Request for preliminary injunctive relief

Although not addressed in the defendants' Motion to Dismiss, to the extent the Amended Complaint requests preliminary injunctive relief, the plaintiff's allegations do not meet the required standard to warrant such relief under Rule 65(a) of the Federal Rules of Civil Procedure and the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). *See* Am. Compl. ¶ 45. As noted by the Fourth Circuit in *The Real Truth About Obama v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009):[3]

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial.
>
> * * *
>
> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish

---

[3] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case. *See* 575 F.3d at 345-347.

7

> "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." And all four requirements must be satisfied. Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

*Real Truth*, 575 F.3d 345–46 (citations omitted).

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Real Truth*, 575 F.3d at 346–47. The *Real Truth* further distinguishes the *Winter* standard from the old *Blackwelder* standard because it no longer requires the court to balance the irreparable harm to the respective parties, but rather requires the plaintiff to make a clear showing that he is likely to be irreparably harmed. A court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction. The Fourth Circuit again emphasized that *all four* factors must be met in order to justify this extraordinary relief. *Id.* at 347. Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in all federal courts. *Id.*

In the instant case, the plaintiff requests, *inter alia*, that the court grant a preliminary injunction "ordering defendants to provide medical treatment by outside doctor in the hospital and release[] plaintiff to general population [with] medical treatment for burning torn ligament defendants caused." Am. Compl. ¶ 45. The plaintiff has only asserted theoretical injury. A mere possibility of harm will not suffice to support the granting of a preliminary injunction. *Winter*, 555 U.S. at 21. Thus, the plaintiff has not clearly shown that he is likely to succeed on the merits

8

of his claims or that he is likely to be irreparably harmed without preliminary injunctive relief. Accordingly, the court **FINDS** that the plaintiff has not demonstrated a right to a preliminary injunction under the circumstances.

### B. The Plaintiff's Motions to Rule On/Grant Summary Judgment

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

There is a great deal of confusion concerning whether the plaintiff has properly filed a Motion for Summary Judgment. On July 9 and 10, 2015, the court received three packages of documents from the plaintiff that were addressed to a "Micheal (or Michael) Stenburg" or "Micheal (or Michael) Stenberg" (hereinafter the "Stenberg documents"). Because there was no identifiable person connected to the United States District Court by that name, Magistrate Judge Tinsley lodged the three packages of documents on the docket and held a status conference to determine the plaintiff's intent with the documents.

During the status conference, the plaintiff stated that he had been advised that Mr. Stenberg was someone at the Federal Building who might be able to assist the plaintiff in finding counsel to represent him. Upon being advised that the court does not know of any federal employee by that name, the plaintiff requested that the Stenberg documents be returned to him. On July 14, 2015, Magistrate Judge Tinsley entered an Order [ECF No. 71] directing the Clerk to mail the Stenberg documents back to the plaintiff without re-docketing or any further action being taken thereon.

On October 1, 2015, the plaintiff filed a one-page Motion to Rule on Summary Judgment [ECF No. 88], which attached nearly illegible pages from the Stenberg documents that included the caption "summary judgment" and referred to purported discovery responses by the defendants. The plaintiff appears to request that the court grant summary judgment in his favor because the defendants "admit they placed me in the restraint chair for 8 hours, but deny that it is illegal to leave an inmate in the restraint chair after the threat passes . . . ." Mot. to Rule on Summ. J. 1.

On November 10, 2015, the defendants filed a Motion for Leave to File Response Outside of Time and Response in Opposition to Motion for Summary Judgment [ECF No. 90] ("Motion for Leave"). However, on December 3, 2015, the court entered an Order [ECF No. 91] denying as moot the defendants' Motion for Leave. On January 14, 2016, the plaintiff filed a Motion to Grant Summary Judgment [ECF No. 92], which appears to request that he be granted summary judgment on his Eighth Amendment claims concerning all of the uses of force against him by the defendants. On January 15, 2016, the defendants filed a Response in Opposition [ECF No. 93] to the plaintiff's Motion to Grant Summary Judgment.

The court does not construe the plaintiff's documents to be a properly-filed motion for summary judgment. Moreover, even if the documents could be construed as such, the court **FINDS** that there are genuine issues of material fact concerning the plaintiff's Eighth Amendment claims and that judgment as a matter of law is presently inappropriate.

### III.  CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that the defendants' Motion to Dismiss [ECF No. 80] is **GRANTED in part**, with regard to the plaintiff's claims for monetary damage against all of the defendant in their official capacities, all of the claims against defendants Ballard and Rubenstein, and the plaintiff's request for preliminary injunctive relief as contained in

the Amended Complaint. The Motion to Dismiss is **DENIED in part** with regard to the plaintiff's Eighth Amendment claim against defendant Penick in his individual capacity. The plaintiff's Motion to Rule on Summary Judgment [ECF No. 88] and his Motion to Grant Summary Judgment [ECF No. 92] are **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: March 4, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE