IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**ANDREW MILLER,**

    **Plaintiff,**

v.                                                    Case No. 2:14-cv-16868

**DAVID BALLARD, Warden**
**JIM RUBENSTEIN, Commissioner[1],**
**DAVID MILLER, SGT. Guard,**
**CAPTAIN BRIAN PENICK,**
**CORPORAL JONATHAN WARD,**
**MICHAEL BLAGG,**

    **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the court are the defendants' Motion for Summary Judgment (ECF No. 116) and the plaintiff's Motions for Summary Judgment or to Rule on Summary Judgment (ECF Nos. 118, 122, 123, 124, 127 and 128-2). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, it is respectfully **RECOMMENDED** that both the defendants' Motion for Summary Judgment (ECF No. 116) and the plaintiff's Motions for Summary Judgment or to Rule on Summary Judgment

---

[1] On March 4, 2016, the presiding District Judge entered a Memorandum Opinion and Order (ECF No. 104) dismissing the plaintiff's official capacity claims, his claims for declaratory and injunctive relief and the claims against defendants Ballard and Rubenstein in their individual capacities. Accordingly, the Clerk is directed to terminate Ballard and Rubenstein as defendants herein. This matter is now proceeding only on the Eighth Amendment claims against defendants Miller, Ward, Blagg and Penick in their individual capacities, as stated in the plaintiff's verified Amended Complaint (ECF No. 38).

(ECF Nos. 118, 122, 123, 124, 127 an 128-2) be **DENIED** and that this matter be set down for trial.

## RELEVANT FACTUAL ALLEGATIONS

It is undisputed by the parties that, on November 19, 2013, defendants Miller and Ward were outside the plaintiff's cell preparing to conduct a cell search, when they observed the plaintiff pouring a liquid substance into his toilet and defendant Miller ordered him to stop. It is also undisputed that (1) defendant Ward subsequently sprayed Oleoresin Capsicum ("OC spray" or "pepper spray") into the plaintiff's cell; (2) defendant Blagg deployed a Taser against the plaintiff three separate times; and (3) after the plaintiff was removed from his cell, he was placed in a restraint chair for a period of eight hours, upon the order of defendant Penick. However, certain other facts surrounding the circumstances of this incident remain in dispute. The parties' specific arguments and assertions will be addressed in greater detail *infra*.

## STANDARD OF REVIEW

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a

reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must not resolve disputed facts, weigh the evidence or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and,

3

moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

If a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56. *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

## ANALYSIS

The seminal issue in this case is whether the defendants' conduct violated the plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution. In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

"An inmate's Eighth Amendment claim involves a subjective component and an objective component." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *see also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) ("Determination of whether the Eighth

4

Amendment has been violated requires analysis of subjective and objective components.") (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991))). "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. "The objective component focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010)).

The parties do not address the objective component in any detail. Although the DOC Defendants contend that Smith did not suffer any serious injury from the deployment of OC spray, they do not appear to dispute that OC spray can cause severe adverse effects, and "courts have previously found that similar adverse physical reactions to pepper spray and other chemical munitions were sufficient to create a genuine issue of material fact as to the objective inquiry of an excessive force claim." *Harper v. Blagg*, No. 2:13-cv-19796, 2015 WL 6509131, *12 (S.D. W.Va. Oct. 28, 2015); *see also Tedder*, 527 F. App'x at 274 ("Tedder's adverse physical reaction to the pepper spray – gagging, breathing difficulty, and vomiting – established that the nature of the force Sgt. Johnson used against Tedder was nontrivial."); *Blount v. Collins*, No. 7:12CV476, 2013 WL 4084764 at *4 (W.D. Va. Aug. 13, 2013) (breathing problems, chest pain, and painful burning sensation to eyes, nose and skin that lasted for some time after decontamination following

5

deployment of pepper spray was sufficient to present genuine issue of material fact on objective component of excessive force claim). Moreover, the plaintiff appears to contend that the use of the Taser, which can certainly be considered non-trivial force, either caused or aggravated a hernia. The defendants have admitted that a doctor has diagnosed the plaintiff with a hernia. (ECF No. 120, Ex. F). Finally, the plaintiff further contends that, subsequent to this use of force, he was placed in four-point restraints for eight hours as a punishment, which caused him shoulder pain. (ECF No. 120 at 3). Thus, there are genuine issues of material fact as to whether the defendants' conduct was objectively unreasonable under the totality of the circumstances.

Under the subjective component, "the state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). When prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley*, 475 U.S. at 320-21; *Wilkins*, 559 U.S. at 37.

The defendants' Memorandum of Law identifies and discusses five factors set forth by the Supreme Court in *Whitley* that must be weighed in determining whether force was applied in a good faith effort to maintain or restore order, or whether it was done so maliciously and sadistically for the very purpose of causing harm. (*Id.*) The factors used in making this determination are: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to

temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996). (*Id.*) The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320. The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547). Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322. The undersigned will address the use of force as alleged by the plaintiff under the *Whitley* factors.

### A. The deployment of OC spray and the Taser

The plaintiff first contends that defendant Jonathan Ward used excessive force against him by spraying him with OC spray while he was confined in his cell. According to the verified Amended Complaint, after defendant Miller observed the plaintiff pouring liquid into his toilet and ordered him to stop, no further warning was given before Miller opened the plaintiff's food tray slot ("bean hole") and ordered defendant Ward to pepper spray the plaintiff. (ECF No. 38 at 3-4, ¶ 13). The plaintiff further contends that the pepper spray hit him in the eyes, nose and forehead. (*Id.* at 4, ¶ 14).

The plaintiff further contends that he put his hands up to block the mist of pepper spray from hitting his face. (*Id.*, ¶ 15). At that point, Miller ordered defendant Michael

7

Blagg to Taser the plaintiff. (*Id.*, ¶ 16). When Blagg deployed the Taser, two small spikes hit the plaintiff in the left side of his abdomen and in his left pelvis. (*Id.*, ¶¶ 17-18). The plaintiff alleges that the Taser was set for a time-controlled five second burst and then reset. (*Id.*, ¶ 19). The plaintiff further states that, after the first Taser shot, he fell to the ground as the defendants entered his cell and, at that point, Blagg deployed the Taser a second time. (*Id.*, ¶ 20). The plaintiff further alleges that Blagg then deployed the Taser a third time while the plaintiff's hands were behind his back and he was being placed into handcuffs. (*Id.*, ¶ 21). Thus, the plaintiff contends that he was Tasered for a total of 15 seconds. (*Id.*, ¶ 22).

The defendants contend that this force was used in a good faith effort to gain the plaintiff's compliance and to restore order and discipline to the unit. (ECF No. 117 at 10). In support of their claims, the defendants offer incident reports completed by defendants Miller (ECF No. 116, Ex. A), Ward (*id.*, Ex. C), and Blagg (*id.*, Ex. D), as well as incident reports completed by Richard Toney, a correctional officer who is not named as a defendant herein (*id.*, Ex. B) and Elizabeth Moore, the nurse who assisted with the plaintiff's decontamination and removal of the Taser prongs (*id.*, Ex. G). The defendants have also offered excerpts from the plaintiff's deposition (*id.*, Ex. E), incident reports concerning a prior use of force incident involving the plaintiff on June 4, 2013 (*id.*, Ex. F) and the Intensive Supervision Log and paperwork from the plaintiff's placement in the restraint chair on November 19, 2013 (*id.*, Ex, H).

Starting with the first *Whitley* factor, the defendants contend, that there was an evident need for both the use of the OC spray by defendant Ward and the use of the Taser by defendant Blagg, based upon the "highly volatile situation" and the plaintiff's non-compliant behavior. (ECF No. 117 at 7-8). The defendants contend that, not only did the

8

plaintiff not comply with the initial order to stop pouring the liquid into his toilet, resulting in defendant Miller directing defendant Ward to deploy two one-second bursts of OC spray into his cell, he proceeded to display aggressive behavior, which resulted in the Taser being used repeatedly when he was still non-compliant. (*Id.* at 8). Their Memorandum of Law further states:

> The Plaintiff himself testified that he had contraband, refused orders multiple times, and displayed aggressive behavior. Furthermore, after being sprayed with OC, Plaintiff again displayed non-compliant behavior, and because the OC did not affect Plaintiff, the use of the Taser to gain compliance was utilized and needed. Notably, after the third use of the Taser, Plaintiff finally complied. Had the officers reverted to entering the cell, and confronting the inmate head-on, the risk of injury to the Plaintiff and correctional officers would have risen.

(*Id.*) The defendants' assertions that the plaintiff was being aggressive are supported by the incident reports completed by Miller, Toney, Ward and Blagg. (ECF No. 120, Exs. A-D).

The defendants further assert that, when looking at the second *Whitley* factor concerning the relationship between the need and the amount of force used, Ward and Blagg only used that force which was reasonably necessary to obtain the plaintiff's compliance. (*Id.* at 8-9). The defendants further assert that the plaintiff cannot produce any objective evidence to support the third *Whitley* factor concerning the extent of any injury related to the alleged use of force. Although the plaintiff complained of temporary irritations and possible swelling, the defendants assert that he did not require any medical treatment and had no lasting injury.[2] (*Id.* at 9).

---

[2] The court notes, however, that, in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court clarified that an absence of serious injury is but one factor to consider in the analysis of whether force was used in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. As noted above, the plaintiff alleges that he suffered long-term effects from a hernia, which he attributes to this use of force.

9

The defendants further assert that the officers tempered their response because they began by exercising the least amount of force available by deploying, in accordance with policy, two one-second bursts of OC spray, instead of more invasive, painful or extreme measures.[3]  Thus, they assert that the fourth *Whitley* factor also weighs in their favor.  (*Id.* at 9-10).

Turning to the remaining *Whitley* factor, the threat reasonably perceived by the defendants, their Memorandum of Law relies heavily on the plaintiff's institutional history of assaulting officers and inmates, threatening officers with bodily harm and throwing bodily fluids and excrement at officers from his cell.  (*Id.* at 10).  The defendants further assert that, as a result of this history and the plaintiff's disruptive behavior "these Defendants had good reason to abandon efforts to convince the Plaintiff to stop pouring liquid down the toilet and use force." (*Id.*)  Accordingly, the defendants contend that these factors all weigh in favor of a finding that they acted in a good faith effort to maintain or restore order and not maliciously and sadistically for the very purpose of causing harm.  (*Id.*)

The plaintiff, however, disputes the need for these uses of force and the amount of pepper spray that was used.  His Response to the Motion for Summary Judgment asserts that Ward "used over the legal amount of (2#) one-second burst[s] of Oleoresin Capsicum demanded of officers by the WVDOC/MOCC policy directives.  (ECF No. 120 at 2).  The plaintiff further contends:

> Ward used the chemical agent "twice" on the plaintiff.  The first time hitting the plaintiff in the forehead, "eyes" and nose!  Note:  (At this time the Plaintiff is having trouble seeing).  Then defendant Ward used the chemical

---

[3] As will be discussed *infra*, the defendants contend that, as the plaintiff's behavior became more aggressive, it was necessary to escalate the measures used to the deployment of a Taser in an effort to gain the plaintiff's compliance without further risk to himself or the officers involved.

10

>agent a second time on plaintiff, hitting the plaintiff on the back of the plaintiff's thermal top.

(*Id.*)

The fact that the OC spray was deployed twice is also supported by an incident report completed by defendant Ward. (ECF No. 116, Ex. C; ECF No. 120, Ex. A). However, Ward's incident report states, "I did attempt to deploy chemical agents again however was unable to hit the intended target." (*Id.*) This second deployment of OC spray is not specifically reflected in the incident reports completed by Miller and Toney (ECF No. 116, Exs. A and B), or in the declarations of other inmates submitted by the plaintiff (ECF No. 120, Ex. C). The plaintiff contends that "the use of the weapon [OC spray] twice shows and [sic; an] intent to harm because the only time force is to be used is if and [sic; an] inmate is a threat to himself, others or damaging state property." (ECF No. 120 at 2).

All of the incident reports submitted by the defendants contend that the plaintiff displayed "active aggression" by "charging the food slot" and attempting to stick his hand through the food slot and "swinging at" or attempting to "punch" Ward or Miller. (ECF No. 116, Exs. A, B and C). The defendants contend that this necessitated the first use of the Taser. The defendants further contend that, although the plaintiff fell to the floor upon the first deployment of the Taser, he kept attempting to stand up and was non-compliant with their orders to put his hands behind his back, which necessitated the two other Taser deployments. (ECF No. 116, Exs. A and B; ECF No. 117 at 2; ECF No. 120, Ex. F).

The plaintiff, however, disputes that he was a threat to anyone and further contends that the Taser was used absent any directions or orders from any of the defendants. Specifically, in his deposition, the plaintiff acknowledged that he put his

11

hand up against the bean hole, but denied that it was ever outside the bean hole. (ECF No. 116, Ex. E at 12 [p. 62 of the deposition]). The plaintiff's Response to the Motion for Summary Judgment further states:

> Defendant David Miller order defendant Michael Blagg to taser the plaintiff. Defendant Blagg does so! Then defendant Blagg taser the plaintiff "two additional times" as it say in David Miller's incident report (Exhibit b) Officer Richard Toney's incident report support this stroy [sic; story] (Exhibit b) Nowhere does it say in defendant David Miller or Officer Richard Toney's incident report at that time did the defendants demand the plaintiff to comply with any orders! Defendant Blagg harmed the plaintiff! The plaintiff yelled "it hurts!" It just so happen that the third taser by defendant Blagg went off while the plaintiff was being placed in hand cuffs and shackles. Note: the declarations of Robert Crabill, Jeremy Carter & Mark Johnson supports plaintiff's claims and they all heard plaintiff say "It hurts! In pain!" (Exhibit c).

(ECF No. 120 at 2-3).

The defendants' Reply brief contends that "pain alone does not create a constitutional violation," but rather the plaintiff must demonstrate an "unnecessary and wanton infliction of pain." (ECF No. 121 at 1). The defendants deny that any infliction of pain against the plaintiff on November 19, 2013 was unnecessary and wanton. (*Id.*)

Additionally, the defendants assert that the plaintiff's contention that Ward used "over the legal amount" of OC spray is unfounded and there is nothing in the record that establishes such a "legal" limit. (*Id.* at 2). Furthermore, they assert that any variance in the protocol for using OC spray does not establish a *per se* constitutional violation. The defendants further assert that the plaintiff's contention that the two uses of pepper spray in this incident demonstrates an intent to harm is a mischaracterization of the standards set forth by the Supreme Court. Finally, they contend that the officers reasonably believed that the plaintiff's disposal of the substance in his toilet could damage state property and, thus, the force used was necessary to restore order and was not malicious or sadistic. (*Id.*)

Despite the plaintiff's admissions that he was pouring alcohol into his toilet and that he did not stop doing so as ordered by defendant Miller, there remain material factual disputes concerning the plaintiff's behavior thereafter and whether a second attempt to pepper spray him and multiple deployments of a Taser against him thereafter were reasonable under the circumstances and done in a good faith effort to restore order.

Taking into account the totality of the circumstances and considering all of the *Whitley* factors, the undersigned proposes that the presiding District Judge **FIND** that there are genuine issues of material fact concerning these uses of force against the plaintiff that prohibit granting judgment as a matter of law for defendants Ward and Blagg on the plaintiff's Eighth Amendment claims concerning the use of force in his cell.

### B. The use of the restraint chair

The plaintiff further contends that defendant Brian Penick violated his Eighth Amendment rights by ordering his placement in a restraint chair and leaving him there for a period of eight hours. (ECF No. 38 at 5). The plaintiff alleges that, following his extraction from his cell, he was being compliant and, thus, there was no reason to place him in the chair to begin with. This claim is addressed by the defendants in their Memorandum of Law in support of their Motion for Summary Judgment (ECF No. 117 at 11-15), and is also the sole subject of the plaintiff's Motions for Summary Judgment (ECF No. 118).

The plaintiff's verified Amended Complaint suggests that an inmate placed in the restraint chair must spend a minimum of two hours in the chair, with a recording of his behavior every 15 minutes and a check by a nurse every 30 minutes. (ECF No. 38 at 5, ¶ 29). The plaintiff further contends that he was "well beyond calm" before he was placed in the chair and was silent for the first two hours. (*Id.*, ¶ 30). He further contends that

13

Penick left him in the chair for four more hours, after which time there was a shift change, and he spent a total of eight hours in the chair before being released. (*Id.*, ¶¶ 31-34).

The plaintiff's Motion for Summary Judgment (ECF No. 118) asserts that it is undisputed that Penick ordered his placement in the restraint chair for eight hours after being pepper sprayed and Tasered. The plaintiff further asserts that it is undisputed that he did not create a disturbance while in the restraint chair, but he still was not released. (*Id.* at 1).

The plaintiff's motion and his Response to the defendant's motion contend that a video of his decontamination and strip out process before he was placed in the restraint chair demonstrates that he was "calm" and "not a threat to himself or others." (*Id.* at 2; ECF No. 120 at 3). The plaintiff further contends that Penick displayed a "hateful tone" with him when he told him he was being placed in the restraint chair. (ECF No. 120 at 3). However, neither the plaintiff, nor the defendants, have offered any video evidence herein. The court cannot consider that which has not been offered and made a part of the record. In further support of his position, the plaintiff also offers the defendants' admissions that the plaintiff was taken to the multi-purpose room and placed in the restraint chair per Captain Penick, and that he remained there for about eight hours. (ECF No. 118, Ex. 1 at 2).

The defendants' Memorandum of Law in support of their Motion for Summary Judgment contends that the plaintiff was placed in the restraint chair due to safety concerns, rather than punishment. (ECF No. 117 at 11). The defendants further contend that the plaintiff cannot demonstrate that his placement in the restraint chair was "without penological purpose" and, essentially, they allege that there was still an "emergency situation" occurring because the plaintiff continued to display aggressive

14

behavior some thirty minutes after he was placed in the chair. (*Id.*, at 14 and ECF No. 116, Ex. H at 4).

The defendants' Memorandum of Law further states:

> Here, the Plaintiff was not subdued. As a matter of fact, it took the use of OC and three deployments of the Taser to get Plaintiff to initially comply, yet he still expressed aggressive behavior thirty (30) minutes after being placed in the restraint chair. The Plaintiff was still not being compliant. Therefore defendant Penick was justified in moving forward with the placement in the restraint chair. Furthermore, an emergency situation existed. Plaintiff was an inmate known to be violent and to conceal weapons in his cell. The incident occurred because he was pouring an unknown substance down the toilet. Until the correctional officers could be certain that he did not pose a threat to himself, Corrections staff, other inmates, or the general public, he had to be restrained.

(ECF No. 117 at 14-15). Their Response to the plaintiff's Motion for Summary Judgment acknowledges that the plaintiff was placed in the restraint chair, but contends that fact alone does not violate the Eighth Amendment. The defendants further assert that the undisputed facts demonstrate that the plaintiff was put in the chair for safety purposes and not as punishment. (ECF No. 119 at 1-2).

The undersigned proposes that the presiding District Judge **FIND** that there is a genuine issue of material fact concerning whether the plaintiff's behavior at the time he was placed in the restraint chair, and during the eight hours he remained in the chair, warranted such placement and was done in a good faith effort to restore order or whether the same was malicious and sadistic to cause harm. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that judgment as a matter of law is not appropriate for either the plaintiff or the defendants concerning this claim, at least as to the conduct of defendant Penick.

However, as noted by the defendants in their Memorandum of Law, the plaintiff has not offered any evidence to demonstrate that defendants Ward, Blagg and Miller were

15

responsible for the decision to place the plaintiff in the restraint chair or for his supervision while in it. Rather, defendant Miller's incident report demonstrates that he stayed in pod seven to conduct more cell searches and played no role at all in the plaintiff's placement in the restraint chair. Furthermore, although the incident reports of defendants Ward and Miller indicate that they assisted in the plaintiff's placement in the restraint chair, they did so upon Penick's orders and they did not participate in any part of his supervision thereafter. The plaintiff does not dispute these facts and his own Motion for Summary Judgment only appears to address defendant Penick's conduct with respect to this claim.

Accordingly, based upon the undisputed evidence, the undersigned proposes that the presiding District Judge **FIND** defendants Miller, Ward and Blagg are entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claim concerning his placement in the restraint chair.

### C. The plaintiff's Motions to Rule on Summary Judgment

The plaintiff has also filed several motions in which he simply requests that the court rule on his Motion for Summary Judgment (ECF Nos. 122, 123, 124, 127 and 128-2).[4] The motion in ECF No. 123 contends:

> The defendants have admitted to the illegal use of the stun gun upon the plaintiff while locked in a cell! (3x) The camera prove the plaintiff was pepper sprayed beyond the two one second burst as per the operational procedures![5] The log book prove the plaintiff was placed in 4 points for 8 hrs! an[d] was not a threat! It is proven the plaintiff suffer from a hernia today!

---

[4] ECF No. 128 also contains a Motion for Appointment of Counsel (ECF No. 128-1), which will be addressed in a separate Order.

[5] Again, neither the plaintiff nor the defendants have made any video evidence a part of the record before the court. If such a video was produced during discovery, it is not presently part of the record for consideration on summary judgment.

16

> The plaintiff request this court rule in his favor an[d] demand medical attention!

(ECF No. 123). The undersigned notes that the plaintiff's assertions in this motion go beyond the restraint chair claim asserted against defendant Penick, which is the sole issue addressed in the plaintiff's initial Motion for Summary Judgment. Additionally, as noted above, there are genuine issues of material fact concerning these claims, which prohibit granting summary judgment to either the plaintiff or the defendants.

Additionally, in ECF No. 124, the plaintiff raises, for the first time, allegations that defendant David Miller has engaged in retaliatory conduct against the plaintiff. The motion states: "Defendant David Miller has spilled milk in my cell! Miller has stolen my shoes, refused to give me my library books & phone call privilege since I been in the Q's serving 45 days." (ECF No. 124). Because the plaintiff has raised these conclusory allegations, without any evidentiary support, for the first time in what amounts to an unauthorized sur-reply, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not properly alleged or supported these claims in this civil action and the court should disregard the same.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion for Summary Judgment (ECF No. 116) with regard to the plaintiff's Eighth Amendment claims against defendants Miller, Ward and Blagg concerning his placement in the restraint chair on November 19, 2013. However, it is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** the defendants' Motion for Summary Judgment concerning the plaintiff's Eighth Amendment claims against defendants Miller, Ward and Blagg concerning the

Case 2:14-cv-16868 Document 129 Filed 02/21/17 Page 18 of 19 PageID #: 1026

deployment of OC spray and a Taser against the plaintiff on November 19, 2013, and the plaintiff's claim against defendant Penick concerning his placement of the plaintiff in the restraint chair on that date for a period of eight hours. Finally, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion for Summary Judgment (ECF No. 118) and his Motions to Rule on Summary Judgment (ECF Nos. 122, 123, 124, 127 and 128-2).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff and to transmit a copy to counsel of record.

February 21, 2017

Dwane L. Tinsley
United States Magistrate Judge